In the Matter of DELK ROAD ASSOCIATES, LTD., a Georgia Limited Partnership, Debtor.

**Bankruptcy No. 83–00054A.**

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Jan. 9, 1984.

Frank Scroggins, Atlanta, Ga., for debtor.

John Pennington, James W. McKenzie, Jr., Atlanta, Ga., for shareholders.

## OPINION

WILLIAM L. NORTON, Jr., Bankruptcy Judge.

Presently before this Court is an application for a determination of control submitted by the attorney for the Chapter 11 debtor, Delk Road Associates, Ltd., a Georgia limited partnership. The issue requires a determination by this Court of stock ownership and, consequently, the voting rights of the general partner International Financial Development Corporation ("IFDC") which holds a majority of the debtor's stock. Through the hearing held on October 18 and 19, 1983, and the submission of written briefs, the original dispute has been considerably narrowed. The issue is whether Donald R. Carll, ("Carll") has paid for his IFDC stock. This Court finds that the Georgia Business Corporation Code as applied to the instant facts conclusively establishes Carll's ownership of the stock.

### FINDINGS OF FACT

1. IFDC, a general partner of the debtor, has the controlling interest in the limited partnership;

2. IFDC was incorporated April 14, 1981;

3. The Articles of Incorporation of IFDC authorized issuance of not more than 5,000 shares with a $50 par value for each share;

4. On April 17, 1981, Roger Festa ("Festa") signed a subscription agreement for 690 shares of IFDC for which Festa provided cash and various financial, managerial, organizational, developmental, and other services, which had a combined fair value,

as determined by the Board of Directors of the corporation, of $34,500.00;

5. On September 1, 1981, Carll conveyed by general assignment to IFDC certain real property located in Florida;

6. Prior to February 19, 1982, Carll provided cash and other services to IFDC;

7. On February 19, 1982, Carll signed a subscription agreement for 250 shares of IFDC for which Carll provided cash and various financial, managerial, organizational, developmental, and other services, which had a combined fair value, as determined by the Board of Directors of the corporation, of $12,500.00;

8. On February 19, 1982, Festa as sole shareholder and director executed a corporate resolution entitled Joint Written Consent Of The Sole Shareholder And Director Of International Financial Development Corporation Adopting Certain Actions And Resolutions;

9. Carll received a certificate for 250 shares of IFDC, "fully paid and nonassessible," dated February 19, 1982;

10. A letter dated March 23, 1982, from IFDC corporate counsel instructed Carll, Benjamin Shind, and Fouad Hassan to date their stock certificates February 19, 1982;

11. Minutes of the Board of Directors of IFDC, effective June 22, 1982, affirm certain actions, including redemption of 345 shares of IFDC belonging to Festa and issuance of those 345 shares to Vincent Fantasia ("Fantasia");

12. There is no dispute concerning the ownership of the following shares of IFDC stock:

50 shares of IFDC owned by Benjamin Shind;

10 shares of IFDC owned by Fouad Hassan;

345 shares of IFDC owned by Festa and Fantasia;

13. There have been no allegations of bad faith by the Board of Directors of IFDC in placing a dollar value on the other than cash consideration by any of the shareholders.

## DISCUSSION

The argument made by the Festa faction is that Carll is not entitled to the voting rights inherent in the 250 shares of IFDC he possesses because he failed to pay for those shares. Festa's legal argument is based upon the interplay of certain sections of the Georgia Business Corporation Code. Section 14–2–117(b) OCGA (Michie, 1982) provides that "a subscriber shall not be entitled to vote the shares subscribed for until such shares have been fully paid." The "Comment" following § 14–2–110 OCGA (Michie, 1982) ("Liability of Subscribers and Shareholders") states that the use of the word "shareholder" is a misnomer. One who has not fully paid for his shares is not truly a "*share*holder." Such an individual remains a subscriber even if a "corporation (acting without regard to the provisions of this chapter) may issue shares and share certificates to a person who has not become entitled to them by reason of full payment." Festa argues that the logical conclusion of reading § 14–2–117(b) and § 14–2–110(a), (b)(1) together is that one who has not fully paid for his stock is not a "shareholder" but rather a "subscriber" and should not be treated as a shareholder who has voting rights. The evidence offered to support these legal conclusions consists primarily of testimony that the real property conveyed to IFDC by Carll had not been recorded and could not presently be recorded because of certain title problems. Other testimony suggesting that some of the money which Carll had paid into IFDC was returned to him and that he was to have received a salary rather than a credit toward stock ownership for the services he performed for IFDC was also introduced.

As the parties to this disputed proceeding acknowledge, the precise issue before this Bankruptcy Court has not been treated by Georgia courts.[1] Having examined the ar-

---

1. Georgia courts have apparently lacked the opportunity to comment on this area of the law. Some guidance may be inferred from a decision of the Georgia Supreme Court. In

guments presented by the parties and the relevant sections of the Georgia Business Corporation Code, this Court finds that it is precluded from challenging certain corporate recitals by IFDC which would be necessary in order to sustain the argument that Carll failed to pay for his stock and, consequently, was ineligible to exercise his voting rights.

■ Analysis begins with § 14–2–87 OCGA (Michie, 1982) which authorizes the presumption that an individual in possession of share certificates has fully paid for the shares. The certificate is *prima facie* showing of bona fide full-fledged stock ownership.

§ 14–2–87(a). A corporation shall not issue any share certificate until the share or shares represented thereby are fully paid. Each subscriber, upon payment in full for his shares, shall be entitled to a certificate or certificates certifying the number of shares owned by him and the corporation.

The Court agrees with the Festa argument that the certificate does not comprise conclusive, irrebuttable evidence of such ownership rights. Indeed, the Georgia Business Corporation Act itself acknowledges that a corporation may issue shares and share certificates to a person who is not entitled to them by reason of a full payment. § 14–2–110 ("Comment") OCGA. Full payment becomes conclusively presumed, however, when in the absence of bad faith the Board of Directors issues a resolution as to the fair value of the consideration to the corporation:

§ 14–2–85(c). If payment of any part of the consideration for the issuance of shares or for the disposal of treasury shares is made in other than money, the Board of Directors shall state by resolution its determination of the fair value to

the corporation in dollars of such payment. In the absence of bad faith in making the determination of value, such determination shall be conclusive.

■ The facts indicate in the instant situation that the Board of Directors issued a resolution on February 19, 1982, acknowledging with regard to Carll his subscription agreement for 250 shares of IFDC stock with a par value of $50 per share. The document further accepted and valued the consideration paid by Carll at a dollar amount of $12,500.00. The actual language of the agreement states:

Now, therefore, be it resolved, that said subscription agreements be and the same are hereby accepted, and this Board of Directors has determined pursuant to *Ga. Code Ann.* § 22–506(c) [presently OCGA § 14–2–85(c)] that the land contributed by Donald R. Carll and the cash and financial, managerial, organizational and developmental services provided by all three (3) of the above-named subscribers of the stock have a combined fair value to the corporation as follows:

Donald R. Carll—$12,500.00

Benjamin Shind—$2,500.00

Fouad Hassan—$500.00.

Approximately five months earlier, Carll had conveyed to IFDC, by general assignment, all his right, title and interest in certain Florida real estate. The assignment to IFDC recited that the conveyance was "subject to easements, reservations and restrictions of record, taxes for 1978 and subsequent years, the provisions of the above-described Agreement For Deed, and to the terms and provisions of a certain Mortgage Deed heretofore executed by the Grantor in favor of Joseph F. Jennings as Trustee." This Court finds that IFDC had ample opportunity in the time between the convey-

*Crowder v. Electro-Kinetics Corp.,* 228 Ga. 610, 187 S.E.2d 249 (1972), the Georgia court required a literal reading of the words of the statute. The court held it could not void and cancel certain shares of stock where the Board of Directors had issued no resolution valuing the consideration paid by the shareholder. The failure of the Board of Directors to make that

valuation placed the burden on the corporation to show that the property transferred as consideration was over-valued. In the instant circumstances, the Board of Directors made a valuation and issued a resolution to that effect.

*See also 11 W. Fletcher, Cyclopedia of the Law of Private Corporations,* §§ 5215–5218, 5221 (1971).

ance by Carll and its February 19, 1982 Resolution to reject the consideration represented by the Florida real estate. The issuance of the Resolution of February 19, 1982, ratifies the acceptance of the conveyance by the corporation subject to the interests recited in the assignment. The valuation of the total consideration paid by Carll as recited in the February 19, 1982 Resolution of the Board of Directors may not be undermined in the absence of any allegation of bad faith.

For the reasons set forth above, this Court finds that Carll has paid for 250 shares of IFDC and, in consequence, possesses the voting rights inherent in those shares.